In the Matter of AUSTIN GERALD LOPEZ (Admitted as AUSTIN G. LOPEZ), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 5, 1987

### APPEARANCES OF COUNSEL

*Alan S. Phillips* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*Frank A. Ortiz* for respondent.

### OPINION OF THE COURT

Per Curiam.

Petitioner, the Departmental Disciplinary Committee (DDC),

seeks an order confirming the findings of fact and conclusions of law of a Hearing Panel, and disbarring respondent. Respondent cross-moves for an order denying the application, excusing his failure to file a formal written answer, and granting him a hearing de novo before a different Hearing Panel.

Respondent was admitted to practice in the First Department on June 28, 1965, and maintains an office within the First Department. He was charged with five instances of unethical practices and professional misconduct and conduct prejudicial to the administration of justice as an attorney and counselor-at-law arising out of four different complaints, all of which the Committee resolved against him.

Respondent was retained by Dusolina Guerra on April 8, 1983 in a contested matrimonial proceeding and received a retainer fee of $160. On April 11, 1983, he was paid an additional $840. He served a summons and complaint upon the defendant on April 9, 1983, and thereafter neglected to take any further action in the proceeding. He failed to communicate with his client or respond to any of her communications concerning the matter.

In or about June 1981, respondent was retained by Wanda Guerrero to obtain an uncontested divorce and was paid a fee of $500. Respondent had a summons and complaint served upon the defendant on September 9, 1981, and thereafter, neglected to take any further action, and failed to respond to his client's letter or telephone calls.

In or about 1981, he was retained by Martin Cruz to effect a change of name for his wife. He was paid a fee of $250 in advance, and neglected to take any further action or to communicate with his client, or to respond to any inquiries concerning the status of the matter.

On or about June 28, 1976, respondent's father, Austin Gerald Lopez, Sr., died testate. A provision of his will named Sara Rodriquez Martinez as a residuary legatee. Letters of administration were issued to respondent on September 9, 1979, and he marshaled the assets. He failed to make any distribution to Ms. Martinez, or to Ellen Gordon, who was named in the decedent's will as Mary Ann Kreidl. In June 1981, Herbert Khan, Esq., representing Ms. Gordon, moved to compel respondent to render and settle an accounting. An order directing an intermediate accounting was entered April 1, 1982. Respondent failed to file the accounting, and in August 1982 he was served with an order to show cause to

punish him for contempt of court. He failed to respond, and in an order entered April 18, 1984, was held in contempt. He failed to purge himself of the contempt, and on November 21, 1984 an amended order was entered and warrant issued to the Sheriff of any county directing him to commit respondent to jail until he rendered a final accounting. Service of the warrant was never affected. Respondent has never made any distribution; nor has he accounted for the assets.

In his answer to this motion respondent states, in response to the complaint of Isabel and Martin Cruz, that his delay in filing was due "in part" to the failure of his client to pay the full fee, which was $350, rather than the $250 claimed by the complainants. He also claims to have done other work for which he was not compensated. Although he states that he did communicate with Mrs. Cruz after receiving the initial inquiry from the Committee, he does not respond to the charge that he failed to communicate with her before then, and does not recite what else caused the delay. Another attorney completed the change of name, apparently without any delay or problem in receiving his fee or in communicating with his client.

Respondent states that Wanda Guerrero failed, in spite of numerous attempts by him, to verify a complaint after the summons was served. Because of the delay, he claims, the reoccurrence of an earlier illness prevented him from pursuing the case. Again, another attorney did perform the work, and respondent eventually returned $250 of the $500 fee, after the complaint had been filed.

Respondent states that Dusolina Guerra retained him in April 1983, that a summons was served, and that numerous conferences were held with her husband's attorney in the hopes of reaching a settlement. He claims that since many of the husband's assets were in Puerto Rico, where the husband was concealing them, his task was more difficult. He adds that Mrs. Guerra returned to Puerto Rico without notifying him, thus causing further delay. When he learned that the husband's attorney no longer wished to negotiate, he decided that the matter should proceed to litigation. It was then, he claims, he discovered that Mrs. Guerra had complained to the DDC, notwithstanding his diligent service on her behalf. He ignores any mention of a letter from her or telephone calls.

His father's estate, he claims, is intact, and in November 1986, he retained an attorney, Christopher Lynn, who is now

in the process of winding up the estate. Respondent alleges in his answering papers that no prejudice or financial loss will inure to any of the beneficiaries. He claims the initial delay was due to the refusal of his former attorney to cooperate voluntarily with him. He claims that he has made distribution of the cash assets, "but found it difficult to marshal the assets and make the payment for the legal expenses of the Estate." He acknowledges the order of contempt in 1984 for failure to file an accounting, but, preposterously, claims that he always believed he was not in contempt because two years earlier, in 1982, he had offered disclosure to Herbert Kahn, an attorney for two of the legatees. He claims that he was unable to purge himself of the contempt because of his mental problems. He offers no timetable for the completion of the affairs of the estate, and has not offered proof of a bank account or any other depository where the estate assets are located.

Respondent was originally served with a notice and statement of charges on February 11, 1986 by certified mail, with notice that a hearing was scheduled for March 10, 1986. Respondent did not file an answer, but the hearing was adjourned to March 31, 1986, due to his absence in the Philippines. On March 31, respondent appeared, and acknowledged receipt of the statement of charges.

The hearing was adjourned until May 5 to allow respondent to serve an answer. He was injured in an automobile accident on April 15. A physician's statement furnished by respondent stated that he could return to work on May 6. The hearing was adjourned until May 12 and respondent was so advised.

Respondent requested an adjournment until Tuesday, June 17, but, according to an assistant counsel to the DDC, was granted one only until Monday, June 16, apparently not in writing, so that the "Monday" Hearing Panel, which had originally been designated, could conduct the hearing.

When respondent did not submit an answer by the first week of June, the assistant counsel telephoned respondent's office and left a message on his answering machine. Several days later, respondent telephoned the assistant counsel, who reminded him that the hearing was scheduled for June 16, and that he had not yet submitted his answer. Apparently, because of respondent's history of noncooperation, the assistant counsel telephoned respondent at different times each day during the period between June 9 and June 13, and left messages on his answering machine requesting submission of

an answer and reminding him that the hearing was on June 16. The hearing was held on June 16, 1986, but respondent did not appear.

The Hearing Panel, in a report dated September 22, 1986, found respondent guilty of neglecting legal matters entrusted to him by his clients, a violation of DR 6-101 (A) (3) of the Code of Professional Responsibility; conduct prejudicial to the administration of justice, in violation of DR 1-102 (A) (5); and neglect of his duty as administrator of an estate in violation of DR 6-101 (A) (3). Inasmuch as respondent's acts involved moral turpitude and professional misconduct, the Hearing Panel recommended that respondent be disbarred.

In opposition to the petition before this court, and by way of cross motion, respondent sought an order denying confirmation, and moved for an order excusing his failure to file a formal written answer and to appear before the Hearing Panel, and requested a new hearing before a different panel. He denied the substantive allegations and claimed that his performance should have been satisfactory to his clients, notwithstanding perhaps insufficient communications and some omissions on his part. He claims that during the time the complaints were made against him, in 1985, he was under psychiatric care. He recites a lengthy psychiatric history dating from his service in the Korean War, and including two divorces, two attempts by his daughter at suicide, and the death of his father and two-week-old son within two months in 1976.

Respondent claims that he had responded to the informal inquiries about the complaints in 1985, but began to suffer from physical and mental ailments in late 1985 and early 1986. He took a trip to the Philippines with his wife for a rest, and when he returned was involved in an automobile accident. He claims he never received written notice that the hearing had been scheduled for Monday, June 16, rather than the Tuesday, June 17. He makes no mention of any conversations with the DDC's assistant counsel. When he appeared on June 17, he was informed that the hearing had been held the day before.

On June 19, he wrote a letter to the Panel Chairman, explaining the circumstances of his failure to appear. The Chairman replied that within 10 days of receipt of a transcript of the hearing respondent should submit an affidavit setting forth his meritorious defenses. Respondent claims that

when he received the transcript he was "in a desperate situation and suffering from continuous bouts of depression." He believed that he had been wronged, that the Committee Staff had demonstrated hostility against him, and that it would be futile for him to make a submission. Thus, he concedes, he did not avail himself of the opportunity to submit a defense.

Respondent's various defenses against the charges all conveniently ignore the long delays in his representation of his respective clients, and ultimately place the blame for any misconduct on others, including his clients. One or two lapses might be innocent, but a pattern of irresponsibility and neglect clearly emerges in these cases. In his reply to the affidavit in opposition to the cross motion, instead of responding, he submits an affidavit of an attorney who cannot personally address the substance of any conversations between respondent and the DDC's assistant counsel last June. Nowhere does respondent deny that the conversation occurred. He alleges only that he did not receive written notice, which is conceded.

It is manifestly clear that respondent does not have any defense to the charge that he failed to account. He was held in contempt in that matter. Moreover, he offers no more than his own word, which, if taken at face value, is suspect at best, that the assets are intact and will be distributed. If he were genuinely sincere, he would have, at the least, shown where the assets are, and perhaps produced an affidavit from retained counsel as to his engagement and the prospects of closing the estate properly. Respondent's lack of documentation seriously, if not fatally, undermines his position on this point.

Respondent's explanations in the other matters are inherently untrustworthy, and, taken as a whole, are to be believed only if all the complainants, as well as staff counsel, are untruthful. More importantly, he acknowledges that he was offered the opportunity to submit his defenses after receipt of a transcript, but did not do so. Respondent has refused to take responsibility for his actions and their consequences, and has, as well, attempted to avoid responding to his accusers. The answer and affidavit submitted here constitute his first formal response to the inquiry. We find that enough has been established, both with respect to the charges, and respondent's contemptuous conduct, to warrant disbarment.

Accordingly, the petition should be granted in its entirety, the cross petition denied and respondent's name stricken from the roll of attorneys and counselors-at-law.

MURPHY, P. J., KUPFERMAN, SANDLER, SULLIVAN and WAL-LACH, JJ., concur.

Respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, effective June 5, 1987.